Curia, per

Withers, J.
The questions in this case have, in some degree, grown out of the Act of 1821, (6 Stat. 161;) which introduced an anomalous mode of obtaining a lien-by judgment. That Act recited an existing evil to be, that honest and just creditors were defrauded by means of confession of judgments upon feigned evidence of debt; and a further evil was declared, to wit — that honest debtors were deterred from affording that lien by reason of the expenses attendant on the ordinary mode of confessing judgment.— *165 A confession was, therefore, authorised before the Clerk of the Court, at small cost, after a particular planner prescribed, producing an effectual lien on property as a judgment, and the. fruits of an execution with all the attributes of that process. Actual publicity of such confessions was deemed so necessary, that the Judges are required to cause them to be read on the first day of the term next succeeding the date of their entry in a book, “ for the greater publicity thereof,” (as the Act says); and this language immediately follows, to wit — “and it shall be lawful for any person, who may be aggrieved by the said confession of judgment, to file a suggestion in the said Court, at any time, setting forth that such confession is fraudulent and not founded on bona fide consideration; and an issue shall be made up on the said suggestion; and the samé shall be tried by a jury; and should the jury, by their verdict, find the said confession to be fraudulent, the Judge shall order the said confession to be set aside.”
Under this statute, S. K. Pettus caused a confession of judgment to be made to him, before the Clerk of York district, by his mother, Mary Pettus, on the 13th October, 1830, upon a note for $844 10, dated 12th October, 1830, at one day. Peter Campbell, the son-in-law of Mary Pettus, attended before the Clerk on the occasion, in behalf of S. K. Pettus, and made the neeessary affidavit on the part of Pettus, the payee of the note.
Recently, S. K. Pettus has caused sci fa. to issue, for the purpose of reviving the judgment, which has been dormant hitherto. At Spring Term, 1849, S. P. Sutton presented himself before the Circuit Judge, in opposition to the motion for revival of the said judgment. Representing himself to be a creditor of Mary Pettus, for services rendered and supplies furnished, and, also, a purchaser of her whole estate, real and personal, for valuable consideration, he claimed to be a party aggrieved, under the Act of 1821, and succeeded in obtaining an order to be permitted, as actor, to impeach, on suggestion, before a jury, the judgment aforesaid, as fraudulent and not founded on bona fide consideration. Notice of appeal from that order was given, *166 but not prosecuted, by S. K. Pettus ; such appeal is now before us. At the last term of the Common Pleas for York, the issue, as directed, was tried, and the jury found for the plaintiff, (that is, for S. P. Sutton). In the suggestion filed for Sutton, he recited the existence and description of the judgment he impeached, the order of the Circuit Judge, permitting the proceeding, and suggested that, “ the said judgment is fraudulent and not founded on bona fide consideration.” Issue was joined on this allegation for S. K. Pettus, and a sort of special plea is added, to the effect that Sutton was no subsisting creditor of Mary Pettus at the date of the judgment, nor has he since become such creditor or purchaser as entitles him to impeach the judgment.
On the 24th December, 1846, a deed was executed by Mary Pettus, reciting her great age and infirmity, whereby she was incapable of managing her affairs, her need of one who could, and also take care of her, her confidence in her son-in-law, S. P. Sutton, as suited for such offices; whereupon, in consideration of the premises, and of “the express condition that he, the said S. P. Sutton, will take immediate possession and controul of all the property herein mentioned; that he will allow me to remain on the plantation, and in the quiet and peaceable possession of the mansion house in which I now live ; that he will live in the house with me, unless it is otherwise agreed, and take such care of me, both in sickness and in health, as a generous and liberal hearted man would do under like circumstances: that he will provide for me from time to time, as my wants may require, decent and comfortable clothing, and supply me at all times with an abundance of wholesome food; pay me yearly, and each and every year, ten dollars in cash, at such time as I may need it; and at my death, bury me decently and in a style suitable to my condition in life,” — she bargains, sells, releases and deliveis to him her real and personal estate, (specified) during her natural life only; with a general warranty.
This deed Sutton did not sign, though the form presents a space, seeming to imply that it was expected or intended he should. He has, however, from the date of it, been in possession *167 of the property in pursuance of the deed, and the evidence was, that he had discharged the duties prescribed in it for him.
Very feeble evidence was adduced by Sutton to show that he was a creditor: a great deal was heard, fro and con. as to the question ordered to be tried touching Pettus’s judgment, which satisfied the jury (and this Court does not differ with them) that the judgment, in point of fact, was fraudulent and not bona fide.
A question is raised, whether Pettus is not estopped from disputing the right of Sutton to impeach the judgment, inasmuch as that right was necessarily adjudged in the act of the Court on circuit directing the issue, and recognizing Sutton as a party who had a legal privilege to make it. There does not appear to be any obstacle to an appeal from such an order when made, and convenience would be in favor of such a course in many instances ; since, (to take the present case) if the appeal which was contemplated had been prosecuted, and the order reversed, the trouble of this trial would have been prevented; though, on the other hand, if the verdict be rendered in favour of a judgment creditor, the trouble of trying an appeal from such an order would be superseded. It may be well argued also, that the fact of a trial had on the issue directed, could not, in certain cases, operate to preclude an appeal from the order; for if, in this very case, the issue had been made up and tried instanter, any decision made in any step of the proceeding must have been the legitimate subject of appeal. That the trial of fact was postponed, from circumstances, can scarcely make any distinction in principle. If the idea be advanced, that if the appeal, upon the point in question, be not too late, yet it is too early, and ought to come after the judgment may be ordered to be vacated, the reply may be derived from the case supposed above; for the order, the trial, and the final order setting aside the judgment, may all occur at the same term, on the same day, and strictly as rapidly following steps in the same proceeding; and it is to be remembered that the Act of 1821 peremptorily directs that the Judge shall order the confession to be set aside, if the *168 jury find the same to have been fraudulent. Although, therefore, we scarcely think the present case obliges us to rule, authoritatively, this question, we think the better opinion is, that the appeal from such an order as that under consideration, may be made at once, or at the end of the trial of the issue, as in this case. At any rate, we should not be disposed to preclude this appellant on a point of practice of novel impression.
A new trial, is obviously out of the question. The issue was one of fact, whether the judgment • was bona fide, or, (according to the Act of 1821,) founded upon “feigned evidence of debt.” So far as the agency of the jury is concerned, there is no ground to disturb what they have done.
Who is a person “ aggrieved,” by a fraudulent judgment, in the sense of the statute ? Is Sutton such a person.
The terms are very broad — “ any person who may be aggrieved.” The Act, however, was treating of a description of fraud not unknown to the law before. There was a rule which precluded the complaint of any one who might suffer under a fraudulent judgment, for the reason that he was in pari delicto, or particeps criminis. Every body, therefore, was not allowed to allege a fraud — it was no fraud on him who was equally guilty, or on him who was identical in law. Some restraint certainly must be imposed. Whether the circle of the aggrieved is so far enlarged by the Act of 1821, as to embrace him who is but a creditor at large: — who has no evidence of record to attest his debt — Who has not adjusted the discounts that, perchance, his debtor may hold — who has not met and overcome, all the defences which his debtor might oppose to the whole or a part of his demand, shall be-allowed to take shelter under the broad language of our statute, may present questions of gravity — but we are not driven to determine that matter at present. Though the Law Court of New York, and the general rule in the Court of Equity, admonish us that one with a judgment lien can alone be heard to wage war against the validity of a prior judgment, yet an attaching creditor has been heard in our courts in that *169 undertaking (Posey vs. Underwood, 1 Hill, 262). An English court has allowed a landlord, with no evidence of debt but his lease, to impeach a judgment confessed by a mother-in-law to her son-in-law (Martin vs. Martin, 23 Eng. C. L. R. 221.) The judgment was confessed on warrant of attorney, and the Court thought it had a peculiar power over a warrant of attorney, and set it aside.
This case, however, we think stands fairly upon the ground that Sutton was a purchaser for valuable consideration: of course we assume for this occasion that the deed to him was valid. We look at it as a paper not now impeached. We consider that he has, through the deed, such a specific, direct, legal interest in the property subject to the lien of Pettus’s judgment, in the character of purchaser, as will allow him to occupy the position that has been assigned to him by the order of 1849. It is supposed that a purchaser from Mrs. Pettus, for valuable consideration, must be allowed to remove such an impediment to his enjoyment of property, in his possession, as the judgment of S. K. Pettus has been ascertained by the jury to be. We suppose that though he did not execute the deed, he, nevertheless, took the property in conformity to all its provisions — that, if he took it for benefits secured to him, he also took it cum onere; and though the covenants may not be enforceable in this jurisdiction, yet that there is one suited to that end. We suppose that if Sutton has not paid money, that still he has paid, or has placed himself in a condition of liability to pay, its equivalent. Nor are we affected by the idea that the judgment in favor of Pettus was of record, and that, by operation of law, Sutton is chargeable with full notice of it. That idea, if of any value, would exclude even a rival judgment creditor from the contest — and any subsequent purchaser from attacking a prior fraudulent deed of conveyance of the same property, duly recorded. If Sutton be heard at all, as a subsequent purchaser, he must be allowed to say, on the foundation of the verdict of the jury, that the judgment he assails is no judgment at all as to him: that if he *170 had notice of its existence, he had notice also, and at the same time, that it -was fraudulent and void.
The conclusion is, that the motion be dismissed.
O’Neall, Evans, Waedlaw, Frost and Whitner, JJ. concurred.

Motion dismissed.